## Smith *v.* Fairbanks.

Where a party, who has mortgaged property for the security of a specified sum, afterwards sells the same property *as his own* to another, he thereby warrants the title to the purchaser.

In an action by the purchaser, involving the question of the title to the property, as between him and the mortgagee, where the sale is for a greater sum than the amount due upon the mortgage, and there is no other evidence of value given, the seller is not a competent witness for the purchaser, on the ground of interest.

An exception taken to a witness, on the ground of interest upon his *voir dire*, which is well founded, but overruled by the court, will avail the party, taking it as an exception to all his testimony given in the cause.

When a witness in a cause stands indifferent as to the damages claimed, his liability to one of the parties for the costs of the suit, by way of special damages, will affect his competency.

Where a party sells to another chattels, as *his own property*, the sale implies a warranty of title, equally, whether the chattels be in the possession [of the seller at the time or not.

Trespass, to recover the value of a cow alleged to have been taken on the 20th of August, 1850.

With the general issue the defendant filed a brief statement, setting forth that on the 27th of March, 1847, the cow was duly mortgaged, by one Charles L. Senter to one Silas S. Whitney, to secure the payment of a note of hand for $22, and interest, given to Whitney by Senter, and payable in December following; and that the note being unpaid and the mortgage uncancelled, the cow was taken by the defendant, by virtue of the mortgage, as the servant of Whitney, and by his direction.

To prove the trespass, the plaintiff called the said Senter, who, being examined on his *voir dire*, testified that he sold the cow to the plaintiff for $26, as his property, and that he had before mortgaged her to Whitney, to secure a debt of $22. The defendant then excepted to the competency of Senter on the ground of interest, but the court overruled the exception.

The taking of the cow by the defendant, as the servant of Whitney, by virtue of the mortgage, from the possession of the plaintiff was then proved, and the due execution of the note and mortgage was also shown.

It appeared by the testimony of said Senter, that the cow was sold by Senter to Smith, June 23d, 1849, said cow being then in the pasture of J. S. Moulton, who held a subsequent mortgage upon her, subject to that of Whitney, the sale being made by Moulton's consent, he receiving the consideration of his mortgage at that time, and that at that time there was due upon the note, secured by the mortgage to Whitney, the sum of $7,45, the other part having been previously paid. On that day, Senter made a tender to Whitney of $7,50, which Whitney declined taking, saying that there was not enough. He, however, said nothing about the expense of recording the mortgage, which, it appeared, was the sum of thirty-four cents. The defendant contended that the tender was insufficient to cancel the mortgage, inasmuch as it did not embrace the fees paid by Whitney for the recording. The court overruled the position.

The defendent then offered to prove that, after the tender was made by Senter, Whitney demanded the money of him, and he refused to pay it; but the court ruled the evidence inadmissible.

A verdict was taken by consent of the plaintiff, on which judgment was to be entered, or the verdict set aside and a new trial granted, as the opinion of this court should be upon the correctness of the several rulings made.

*J. H. Hobbs*, for the defendant.

The interest of Senter, appearing from his examination in chief, will exclude him, notwithstanding on the *voir dire* he said he was not interested. *Turner & a.* v. *Pearte*, 1 Term Rep.; *Fisher* v. *Willard*, 13 Mass. Rep. 379.

If a witness has purged himself on the *voir dire* and

sworn in chief, if it should appear, in any subsequent stage of his examination, that he is interested, the court will set him aside.  1 Starkie on Ev. 136, note 2.

The liability of Senter to Whitney, on the note secured by the mortgage of the cow, was $7,45.  Senter's liability to Smith, who called him as a witness, was $26, the price Smith paid him for the cow.  Here the interest of Senter was not equally balanced.

If there is an excess of interest on one side, the witness will be incompetent to testify on that side, if called by that side.  1 Greenl. Ev. 435, (1st ed.) ; *Jones* v. *Brook*, 4 Taun. 464 ; *Hubbly* v. *Brown & a.* 16 Johns. 70 ; *Scott* v. *McLelland & a.* 2 Greenl. Rep. 199, and numerous other cases.

The ancient rule of law is somewhat different, but the cases were broken in upon by *Jones* v. *Brook*, 4 Taun. 464, which was decided June 3, 1812.  And the rule established in that case has been followed by the English courts ever since, and by most of the American courts.

The witness, by his testimony, discharges himself from liability on the mortgage, and the cow cannot be holden by the mortgage, and Whitney is deprived of remedy thereon.

The other questions raised in the case are submitted to the court.

*James Bell*, for the plaintiff.

I.  Senter was properly admitted as a witness, even if he sold to the plaintiff with an implied warranty of title.

On his examination upon the *voir dire*, he disclosed a balanced interest, as he was liable to each party, in the case of the failure of title.  1 Phil. Ev. 87 ; 3 Phil. Ev. n. 77, p. 81.

And though it subsequently appeared, in the progress of the case, that part of Whitney's mortgage debt had been paid, so that, perhaps, the witness would not be liable to Whitney beyond the balance remaining due, it was not the

duty of the court to exclude the testimony without a motion for that purpose by the defendant. If such a motion had been made, the witness might have been made competent by a release. Stronger objections to testimony have been held to be waived by a party's silence. *Lawrence* v. *Houghton*, 5 Johns. 129; *Blanchard* v. *Richley*, 7 Johns. 198.

II. But there was no implied warranty of title in the sale by Senter to the plaintiff, because Senter had not possession of the property at the time of the sale; and Senter's interest, therefore, if he had any, was in favor of the defendant. 2 Kent's Com. 478; 2 Black. Com. 451; *McCoy* v. *Arthur*, 4 Barb. Sup. Ct. Rep. 323, cited 9 U. S. Dig. 390.

No question is now made by the defendant, in regard to the sufficiency of the tender, or to his offer to prove a subsequent demand.

WOODS, J. The exception to the competency of Senter, on the ground of interest, we think, was well taken. On the *voir dire*, he stated that he sold the cow to the plaintiff for $26, and that he had previously mortgaged her to Whitney, to secure the payment of $22. The point in issue between the parties was the property of the cow. He also stated that he sold the cow to the plaintiff, as being at the time the property of the witness. The sale, then, was attended with an implied warranty of title on the part of the witness. It was not a sale and warranty of his interest merely in the cow, be that what it might, but of the entire property and title of the cow. Upon the sale and warranty, then, he became answerable to the plaintiff for the value of the cow upon a failure of title, and also for the necessary expense of the litigation to determine the question of title. *Kingsbury* v. *Smith*, 13 N. H. Rep. 109.

The only evidence of value, given upon this examination of the witness, upon his *voir dire*, was the price paid for the cow. In the absence of other evidence, in such a case, the price paid is the value and the true measure of dam-

ages in an action, upon a warranty of title. Upon his *voir dire*, then, the witness was shown to be liable to the plaintiff for the sum of $26, and the costs of the litigation. While to the defendant he was answerable for the sum of the note, to secure which the mortgage was given, viz: $22,00. Upon his *voir dire*, then, his interest appeared not to be balanced, and he was shown to be interested to give evidence in favor of the plaintiff. And we think the exception taken is properly to be regarded as extending to the further testimony of the witness. This was not the case of a witness shown upon his *voir dire*, not to be interested, and who afterwards, by his testimony, proves his interest. In such a case, perhaps, the want of interest being once shown, it may be requisite that when it appears in the course of the examination in chief, the exception should be renewed, or it may be regarded as waived. In the present case, the exception to the competency of the evidence on the ground of interest, arising upon the *voir dire*, was not waived, but was insisted upon, and the examination proceeded, and further evidence, sustaining the objection, was given in the progress of that examination. We think it may not, in such a case, be necessary to renew the objection which had been already made and noted, and that it was not waived by omitting to do so. In fact, the evidence in chief did not vary the character of the interest shown upon the *vior dire*, but only showed it as existing in a greater degree, by showing the note partially paid, and the balance remaining unpaid to be only $7,45. It seems to us that no rule of practice can be found, requiring a renewal of the exception, in a case like this, in order to avoid a waiver of any exception that might appear to exist. The exception, upon the particular ground of interest having been taken and overruled, it would be idle to require its renewal, when the same result might well be expected upon a renewal of the objection. An omission to renew the objection, under such circumstances, would

not, we think, be fairly regarded as a waiver of the objection already once taken.

The whole current of the authorities of the present day hold that an excess of interest, in favor of the party calling the witness, is a sufficient ground for excluding the witness.

The attention of the court has been directed by the plaintiff's counsel to the case of *Larbalestier* v. *Clark*, 1 B. & Ad. 899, as showing this to be a case in which the witness was competent. But, we think, that case is not in conflict with the case of *Kingsbury* v. *Smith*, but, on the other hand, susstains it, so far as it bears upon the question at all.

It was there decided that, in an action for goods sold, a witness cannot be called for the defence, to prove that the defendant has paid the amount to him, if it appear that he obtained the payment under such circumstances that, in the event of the plaintiff's recovery, the witness would be liable to the defendant, not only for the sum so recovered, but also for the costs of the action, as damages resulting from the witness' deceit.

The doctrine that when a witness stands indifferent as to the sum claimed as damages in a cause, his liability to one party for the costs, by way of special damage, will affect his competency, was established in *Jones* v. *Brooke*, 4 Taun. 464, and is now the well settled rule in England. *Haaman* v. *Losbrey*, Holt's N. P. C. 350 ; *Edwards* v. *Lowe*, 8 B. & C. 407. And *Taunton*, J., in *Larbalestier* v. *Clark*, states the rule to have been well established ever since the case of *Jones* v. *Brooke*.

It was contended that here was no warranty shown, and, consequently, no interest. In order to imply a warranty of title, however, it is necessary only that the seller should sell the property as his own. That is equivalent to an affirmation that he holds the title, which implies a warranty. To sell property as one's own can mean nothing else than that it was sold, with the understanding of both parties, that the title of the property was in the seller. In *Medina*

v. *Stoughton*, 1 Salk. 210, is a dictum of Lord *Holt*, to the effect that " where one, having possession of any personal chattel, sells it, the bare affirming it to be his amounts to a warranty, and an action lies on the affirmation ; *aliter* where the seller is out of possession."

*Buller*, J., in delivering his judgment in *Pasley* v. *Freeman*, 3 T. R. 57, 58, in remarking upon *Medina* v. *Stoughton*, after stating the dictum of *Holt*, says, " this dictum of Lord *Holt* is not mentioned by Lord *Raymond* 593, who reports the same case, and if an affirmation, at the time of sale, be a warranty, I cannot feel a distinction between the vendor being in or out of possession. The thing is bought of him, and in consequence of his assertion ; and if there be any difference, it seems to me that the case is strongest against the vendor when he is out of possession, because then the vendee has nothing but the warranty to rely on." Long on Sales 120, lays down the doctrine that " the seller is always understood to undertake that the commodity he sells is his own." And at page 122, it is said that the soundness of the distinction taken in the dictum of Lord *Holt* may well be doubted.

Mr. Chancellor *Kent*, in 2 Kent's Com. 347, (ed. of 1827,) lays down the rule thus : " In every sale of a chattel *as one's own property*, if the possession be at the time in another, and there be no covenant or warranty of title, the rule of *caveat emptor* applies, and the party buys at his peril. But if the seller has possession of the article, and he sells it as his own property, he is understood to warrant the title. A fair price implies a warranty of title, and the purchaser must have a satisfaction from the seller, if he sells the goods as his own, and the title proves deficient." In 2 Kent's Com. 477, (ed. of 1840, being the 4th edition,) the doctrine is laid down in language somewhat different from that found in the former edition already referred to. " In every sale (says he) of a chattel, if the possession be at the time in another, and there be no covenant or warranty of title, the rule of

Smith *v.* Fairbanks.

*caveat emptor* applies, and the party buys at his peril. But if the seller has the possession of the article, and he sells it as his own, and not as agent for another, and for a fair price, he is understood to warrant the title. A fair price implies a warranty of title, and the purchaser may have a satisfaction from the seller, if he sells the goods as his own, and the title proves deficient."

In this case, it would seem probable that a fair price was paid for the cow, if that can make any difference. The contrary, is not shown. We, however, do not give any particular force to that circumstance. The cow was sold as the property of the witness. That, as we regard it, is the material fact. Such a sale impiles warranty of the title. The price, so far as it is to have force, is for the reason that it tends to show a probable intention to sell the entire property of the chattel. No doubt, then, exists, we think, that if the title should prove deficient, the witness, in this case, would be answerable as upon a warranty of title for the price paid, and the reasonable costs of this litigation. We think the mere fact of want of possession in the seller, at the time, who sells the chattel as his own property, can make no difference in relation to the warranty. The only thing which gave rise to any such idea was the dictum of Lord *Holt*, not probably assented to by Lord *Raymond*, and distinctly repudiated by *Buller*, J.; and although stated by *Kent* as the rule, in his first edition, when the sale is made as of one's own property, yet modified in the fourth, in the case of a sale of the chattels as one's own property. As to the other points of ruling, the exceptions are waived by the counsel of both parties, and it, therefore, becomes unnecessary to give any opinion thereon.

*Verdict set aside.*